Demetrius JOHNSON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–9812–CR–620.

Court of Appeals of Indiana.

Jan. 18, 2000.

Michael R. Fisher, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Liisi Brien, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

DARDEN, Judge

### STATEMENT OF THE CASE

Demetrius Johnson appeals his conviction by jury of rape as a class A felony. We affirm.

### ISSUE[1]

Did the trial court abuse its discretion in admitting evidence regarding a prior attempted rape for which Johnson was not charged?

### FACTS

In April 1996, 17 year-old A. first met 26 year-old Demetrius Johnson and his friend Murry at Greenwood Mall. A. "had a slight interest" in Murry and set up a double date with Murry, Johnson and one of her friends. (R. 263). At approximately 11:00 p.m. on May 2, 1996, Johnson picked up A. at her house. A. sneaked out of the house because she was not supposed to go out on a school night. Johnson and A. drove to A.'s friend's house, but the

---

1. Johnson also argues that the trial court erred when it overruled his *Batson* challenge to the State's peremptory strike of a prospective alternate juror. However, because the alternate juror did not participate in jury deliberations, Johnson could not have been harmed by the trial court's decision. We therefore need not address the issue.

friend's mother would not let the friend leave. Johnson and A. left A.'s friend's house in Johnson's car.

A. believed that she and Johnson were going to pick up Murry; however, Johnson drove A. to an isolated area, pulled out a gun, put it to her head, and told her to take off her clothes and get into the back seat where he raped her. At some point during the rape, Johnson hit A. in the eye. Thereafter, Johnson drove A. home and threatened to kill her if she told anyone what had happened. A. took a shower and did not tell her mother and stepfather that she had been raped.

The following day at school, A.'s guidance counselor asked A. about her eye. A. told the counselor that she had been raped, and the counselor telephoned A.'s mother and stepfather. A. was subsequently interviewed by Indianapolis Police Department Officer Gerald Shinneman, and she gave him the clothing that she was wearing during the rape for DNA testing. Shinneman also interviewed Johnson who stated that he had been in a car with A. but that there had been no sexual contact between them. Subsequently, Johnson voluntarily gave a blood sample.

Later, when Johnson learned that the DNA from the semen found on A.'s clothing matched the DNA profile of his blood, Johnson changed his story and told the officer that he had engaged in sexual intercourse with A. but that it was consensual. Johnson was charged with rape as a class A felony.

At trial, the court allowed Angela Green, Johnson's former girlfriend, to testify during the State's case in chief that on May 15, 1995, after she and Johnson had broken up, she was in a car with Johnson at night when he suddenly put a gun to her neck and told her that he "wanted some." (R. 512). Green, who was able to escape from the vehicle, was too scared to pursue prosecution.

The trial court admitted Green's testimony pursuant to the intent exception to Ind. Evidence Rule 404(b). In this regard, the trial court instructed the jury as follows immediately before Green testified:

Ladies and gentleman of the jury, at this time the Court is going to admonish you and instruct you that the testimony of Angela Green is being offered to show intent. It is not to be considered as substantive evidence of a prior bad act, or that the Defendant acted in conformity with any prior bad act, or that the Defendant had a propensity to commit this type of prior bad act....

(R. 505–06). In addition, the court instructed the jury as follows during final instructions: "Evidence of a prior bad act may not be considered as a basis for an inference that the Defendant acted in conformity with his prior bad conduct or with his indicated propensity to commit the prior bad act." (R. 129). The jury convicted Johnson of rape as a class A felony.

## DECISION

Johnson argues that the trial court erred in allowing Green to testify about the prior attempted rape. According to Johnson, the evidence was inadmissible pursuant to Evid.R. 404(b) because it was "offered to support the inference that [he] had committed a prior bad act and, therefore, had committed the offense alleged in this case in conformity with that prior conduct." Johnson's Brief, p. 7. We disagree.

■ The admissibility of evidence is within the sound discretion of the trial court, and the decision whether to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Dumes v. State,* 718 N.E.2d 1171, 1174 (Ind.Ct.App.1999). Evid.R. 404(b) provides in pertinent part as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, howev-

er, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Our supreme court has set forth the following standard for assessing the admissibility of 404(b) evidence:

(1) the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) the court must balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403. When inquiring into relevance, the court may consider any factor it would ordinarily consider under Rule 402. These may include the similarity and proximity in time of the prior bad act to the charged conduct, and will presumably typically include tying the act to the defendant. . . .

*Hicks v. State,* 690 N.E.2d 215, 221 (Ind. 1997).

■ In the present case, the State offered the prior misconduct evidence to prove Johnson's intent, a proper purpose under Evid.R. 404(b). Our supreme court elaborated on the intent exception contained in Evid.R. 404(b) in *Wickizer v. State,* 626 N.E.2d 795 (Ind.1993). In *Wickizer,* the court concluded that "Indiana is best served by a narrow construction of the intent exception in 404," and declared as follows:

The intent exception in Evid.R. 404(b) will be available when a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent. When a defendant alleges in trial a particular contrary intent, whether in opening statement, by cross-examination of the State's witnesses, or by presentation of his own case-in-chief, the State may respond by offering evidence of prior crimes, wrongs or acts to the extent genuinely relevant to prove the defendant's intent at the time of the charged offense.

*Id.* at 799. Thus, the defendant must first place intent "at issue" before prior bad act evidence relevant to intent is admissible. *Christian–Hornaday v. State,* 649 N.E.2d 669, 671 (Ind.Ct.App.1995).

■ The relevant intent in this case is the intent to "ha[ve] sexual intercourse with a member of the opposite sex when . . . the other person is compelled by force or threat of force." Ind.Code § 35–42–4–1. Here, Johnson put his intent at issue during cross-examination of A. when he alleged that she had engaged in consensual sexual intercourse with him after he told her that Murry was with some other girls at his apartment. Johnson further alleged that A. only stated that she had been raped to explain her sexual contact with a man of a different race to her parents.

The State then offered the evidence of Johnson's prior misconduct during direct examination of Green, after Johnson had made his declaration of particular contrary intent during his cross-examination of A. Presentation of the evidence in such a manner complies with the dictates of *Wickizer. See State v. White,* 538 N.W.2d 237, 243 (S.D.1995) ("When appellant claims innocence, such as he does here, by a mitigating factor, namely, consent, he thus begets the establishment of intent as a material issue in the crime of rape."); *McLellan v. Benson,* 877 S.W.2d 454, 457 (Tex.App.1994) ("In sexual assault cases, when the defensive theory of consent is raised, a defendant necessarily disputes his intent to do the act without the consent of the complainant, and his intent is thereby placed in issue.").

Prior misconduct evidence must also be relevant. *Hicks,* 690 N.E.2d at 221. Relevant evidence is that which has any tendency to make a fact of consequence more or less probable. Ind. Evidence Rule 401. When inquiring into relevance, we may consider the similarity and proximity in time of the prior bad act to the charged conduct. *Id.* Here, in May 1995, Johnson used a gun to attempt to force Green to

have sexual intercourse in a vehicle. A year later, Johnson used a gun to force A. to have sexual intercourse in a vehicle. Johnson was acquainted with both women, initially appeared friendly with them and then suddenly pulled out a gun, placed it against the victims' upper extremities and demanded that each one engage in sexual intercourse with him. Further, both incidents occurred at night. Johnson's prior misconduct is sufficiently similar and close in time to be relevant to prove his intent at the time of the charged offense.

 We now turn to the issue of the probative-prejudicial balance. Relevant evidence is admissible unless its probative value is substantially outweighed by the danger of unfair prejudice. Ind. Evidence Rule 403. We review this balance for an abuse of discretion. *Hicks,* 690 N.E.2d at 223.

The evidence of Johnson's prior misconduct is probative because there were no witnesses to A.'s rape. *See Christian–Hornaday,* 649 N.E.2d at 673. In addition, the prior misconduct evidence lends credence to A.'s story because the prior misconduct contains many of the details found in the case for which Johnson was charged. *See id.*

We further note that any potential prejudice to Johnson was minimized by the trial court's instructions to the jury. *See id.* First, immediately before Green testified, the court admonished and instructed the jury that Green's testimony was offered to show only Johnson's intent in this case and was not to be considered as substantive evidence of a prior bad act or that Johnson acted in conformity with any prior bad act or had a propensity to commit this type of act. The trial court further instructed the jury that a "person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." (R. 125).

Second, in its final instructions, the court also instructed the jury as follows: "Evidence of a prior bad act may not be considered as a basis for an inference that the Defendant acted in conformity with his prior bad conduct or with his indicated propensity to commit the prior bad act." (R. 129). The probative value of the uncharged misconduct evidence is not substantially outweighed by the danger of unfair prejudice.

The trial court did not abuse its discretion in admitting evidence regarding a prior attempted rape for which Johnson was not charged to show his intent in this case.

Affirmed.

KIRSCH and BROOK, JJ., concur.